O’Neill, J.
The plaintiff was a used-car dealer and the defendant a small-loan company operating under a license issued by the Division of Securities of the state of Ohio.
On November 26, 1957, the plaintiff and defendant entered into a written agreement, the provisions of which are as follows:
“We, the undersigned hereby agree on the following reserve plan to begin November 26th, 1957 covering the retail sale of automobiles sold to individuals by Duane’s Used Cars, 1804 Adams Street, Toledo, Ohio, and financed by Midwest Finance Corporation.
“We, Midwest Finance Corporation, are to hold a 20% reserve on all deals up to and including $550 and a 15% reserve on all deals above $550. All losses are to be charged against this reserve and after an account becomes 60 days past due according to contract must be charged off. On December 1st, 1958 and every 6 months thereafter Midwest Finance Corporation will *155 adjust this reserve and Duane’s Used Cars will be paid the excess on accumulated reserve above 20% of the then existing balance. This 20% applies to existing balance on business acquired from Duane’s Used Cars starting November 26, 1957.”
Subsequent to the signing of this contract between plaintiff and the defendant and pursuant to the terms thereof, the plaintiff referred 219 used-car customers to the defendant and loans were made to these customers.
The word, ‘ ‘ reserve, ’ ’ is misleading in this contract and, upon a casual reading, conceals the intent of the parties and what the parties did pursuant to the contract.
In each loan which was made, the borrower signed a note and also signed a separate written paper directing the defendant to disburse to the plaintiff the full amount stated on the face of the note.
Unknown to the borrower, but pursuant to the agreement between the plaintiff and the defendant, the defendant disbursed, i. e., loaned, only 80% of the amount stated on the face of the note, and, in effect, the plaintiff extended credit to the borrower for the other 20% of the amount stated on the face of the note. The plaintiff received no interest on the 20% of the amount stated on the face of the note which he advanced, but the defendant collected interest on the full amount of the face of the note at the maximum small-loan rate of interest, although it in fact had loaned only 80% of this amount. The agreement between the plaintiff and the defendant was usurious and in violation of Sections 1321.13 and 1321.16, Revised Code (references are to these sections as in effect between October 1, 1953, to October 1, 1961), and, therefore, void ab initio. See Capital Loan & Savings Co. v. Biery, 134 Ohio St., 333, 16 N. E. (2d), 450.
It should be noted here that violations of Section 1321.13, Eevised Code, are punishable by penalties provided in Section 1321.99, Eevised Code.
In the event of default by a borrower for more than 60 days, pursuant to the agreement, the defendant must cancel the plaintiff’s right to that 20% of the loan for which the plaintiff had extended credit and the plaintiff was then entitled to receive neither the principal nor interest on the share of the loan for which he had extended credit.
*156 In several instances where the borrower was in default' for 60 days or more, the plaintiff paid to the defendant the full amount stated on the face of the note, plus the maximum legal small-loan rate of interest on the full amount stated on the face of the note. After this payment by the plaintiff to the defendant, the defendant then disbursed to the plaintiff the 20% of the amount stated on the face of the note for which plaintiff had extended credit but paid the plaintiff no interest, the defendant retaining the interest on the full amount stated on the face of the note, even though it had “loaned” only 80% of that amount. This was in violation of law, Sections 1321.13 and 1321.16, Revised Code.
The defendant contends that these payments by the plaintiff were “voluntary. ’ ’ A careful scrutiny of the transaction indicates that pursuant to the agreement the plaintiff was not required to make this payment to the defendant, but, if he had not done so he would have lost the entire principal for which he had extended credit, which amounted to 20% of the total loan to the borrower, and would have received no interest.
The defendant makes two contentions:
First, that this arrangement between the plaintiff and the defendant was similar to a seller obligating his savings account deposited with a loaning institution as additional security for a loan to a purchaser. This contention is without merit because there was no deposit of any kind made here by the plaintiff with the defendant.
Second, the defendant argues that this arrangement was in the nature of a pledge by the plaintiff to the defendant. A careful analysis makes it clear that this contention is without merit. At the time the agreement was entered into, which was prior to the making of any loan, there was no delivery of any personal property bv the plaintiff to the defendant as a pledge and no paper or thing was delivered by the plaintiff to the defendant which represented legal or equitable title to personal property being pledged. The elements of a pledge are not present in this transaction.
Judgment can not be entered for the plaintiff against the defendant because the plaintiff was a party to this contract which was void ab initio, and he can not recover upon a void contract.
*157 The judgment of the Court of Appeals for the defendant is, therefore, affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Taft, Matthias, Badcliff and Griffith, JJ., concur.
Badcliff, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.